

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Tom C. King
Capitol Building
Austin, Texas

Dear Mr. King:

Opinion No. 0-3343
Re: Your official status since
the Senate's refusal to con-
firm your appointment as State
Auditor.

We beg to reply to your letter of March 17, 1941,
requesting our opinion as to whether your tenure of the of-
fice of State Auditor and Efficiency Expert ended when the
Senate rejected your appointment, or whether it is your duty
to hold the office "de facto" until another official is ap-
pointed and has qualified. Pertinent facts are as follows:
Your prior term in the office ended on September 13, 1940, at
which time you were appointed by the Governor to succeed
yourself, after which you seasonably filed your oath and bond;
on January 22, 1941, the Governor submitted your name to the
Senate for confirmation; and, on March 6, 1941, such confirma-
tion was rejected.

Your question arises in view of Article 16, Section
17, of the State Constitution, reading:

"All officers within this State shall continue
to perform the duties of their offices until their
successors shall be duly qualified."

The above quoted Section of the Constitution is a
general provision. When an incumbent officer's regular term
expires and his successor does not immediately qualify, unques-
tionably the above section applies in such way as to require
the incumbent to continue the performance of the duties of the
office until his successor qualifies. McGee vs. Dickey, 18
S. W. 404; Venn vs. Featherston, 69 S. W. 983; State vs. Jordan,
28 S. W. (2) 921.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Tom C. King, page 2

But, we have another Section in our Constitution specifically covering the identical problem at hand. Article 4, Section 12, reads:

"All vacancies in State or district offices, except members of the Legislature, shall be filled unless otherwise provided by law, by appointment of the Governor, which appointment, if made during its session, shall be with the advice and consent of two-thirds of the Senate present. If made during the recess of the Senate, the said appointee, or some other person to fill such vacancy, shall be nominated to the Senate during the first ten days of its session. If rejected, said office shall immediately become vacant, and the Governor shall, without delay, make further nominations, until a confirmation takes place. But should there be no confirmation during the session of the Senate, the Governor shall not thereafter appoint any person to fill such vacancy who has been rejected by the Senate; but may appoint some other person to fill the vacancy until the next session of the Senate or until the regular election to said office, should it sooner occur. Appointments to vacancies in offices elective by the people shall only continue until the first general election thereafter."

Since you were appointed during the recess of the Senate, nominated to the Senate at its present session and by that body rejected, you have come squarely into that part of said section wherein it provides that "if rejected, <u>said office shall immediately become vacant</u>." While a different fact situation was involved in Denison vs. State, 61 S. W. (2d) 1017, error refused, the following language in the opinion in that case, written by Mr. Justice Baugh, is pertinent:

"The language, 'If rejected, said office shall immediately become vacant, and the governor shall, without delay, make further nominations, until a confirmation takes place,' clearly and by necessary implication denies to a nominee, whose confirmation has been rejected by the Senate, any right whatever to occupy the office or to discharge, after such rejection, any of the duties thereof."

Honorable Tom C. King, page 3

It may be suggested that the provisions that "said office shall immediately become vacant" means that such office shall become vacant, not physically, but vacant merely for the purpose of authorizing the appointment of someone to fill the place. However, we think that argument is fully dissipated by the following considerations: (1) Where a recess appointment is made, as was the case here, the Governor is not required to nominate such recess appointee to the Senate. He is just as free before rejection as he is afterward to submit the name of someone else. The requirement merely is that "the said appointment, or some other person to fill such vacancy, shall be nominated to the Senate during the first ten days of its session." So, a vacancy in the limited sense suggested existed before the rejection. Hence, if the provision "said office shall immediately become vacant" means anything it is that the office becomes vacant physically as well as legally. (2) To hold that such an officer would hold over - even after he has been rejected - until a successor should be nominated, confirmed and has qualified, would be to open the way to a complete disregard of Section 12 of Article 4, State Constitution. For, if such an officer is not definitely "out" upon rejection, no end logically can be found for his service, if by change the Senate should adjourn without the appointment, confirmation and qualification, of a successor. Under that interpretation, if at some future time a Governor should desire to do so, he could maintain his appointee in office year after year, notwithstanding rejection by the Senate, by simply failing to nominate or appoint someone else. (3) In providing that if there should be no confirmation during the session governor "shall not thereafter appoint any person to fill such vacancy who has been rejected by the Senate," the writers of Section 12 evidently thought they had already effectively eliminated the rejected appointee from office and were foreclosing the only remaining possibility that a rejected appointee or nominee be allowed to hold such office.

As already noted, Article 16, Section 17, is a general provision, while Section 12 of Article 4 is a special one dealing with this identical problem. To hold that said Section 17 is effective here, in our opinion would be to nullify a part of said Section 12 of Article 4, and thus a general provision would be held to control the special one, which is contrary to the well established rule of construction. On the other hand, there

Honorable Tom C. King, page 4

is ample room for Article 16, Section 17, to operate without applying it to this kind of situation. Under the interpretation which we have given both provisions survive and function.

It is our considered opinion that your duties and tenure of office ended on March 6, 1941, when your appointment was rejected by the Senate.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By       Glenn R. Lewis
              Assistant

GRL:db

APPROVED MAR 28, 1941

ATTORNEY GENERAL OF TEXAS